COUNTY OF CALDWELL AND E. L. STEELE, TREASURER, v. JOHN J. GEORGE.

(Filed 4 December, 1918.)

1. **Appeal and Error—Findings—Consent—Evidence.**

    Where, by agreement, a jury trial has been waived by the parties to an action and, by consent, the judge has found the facts upon the evidence, his findings are not reviewable upon appeal when supported by the evidence.

2. **Bonds—Municipal Corporations—Bills and Notes—Presentment for Payment—Delays—Payee's Request.**

    Where nonresident bidders for an issue of county bonds, through their authorized agent, has put up their checks required as a condition precedent, as evidence of good faith, and later request a special act of the Legis-

lature to be passed to give the bonds validity, and also a decision of the Supreme Court decision thereon, evidence that they acted throughout with the county commissioners to produce the result they requested is sufficient evidence that they had not withdrawn their bid, and their checks given for the faithful performance of their obligations, presented for payment within a reasonable time thereafter, are subject, in an action brought by the county, to the damages sustained by reason of a resale of the bonds, made necessary by their conduct.

3. **Same—Principal and Agent.**

Where the authorized agent of nonresident bidders for an issue of county bonds has endorsed the notes of his principal required as a condition precedent, and given his own note, with his principal's endorsement, as a pledge of their good faith in making the bid, and has actively participated in and requested the delays necessary to satisfy his principal as to validity of the bonds, his endorsement and note carries with them a personal liability, and his conduct is evidence that his liability has not ceased or the bid withdrawn, and the county may maintain a personal action to recover on the notes given, to the extent of its loss occasioned by its being forced to make a resale of the bonds.

4. **Contracts—Writing—Ambiguity—Evidence—Conditions—Parol Evidence.**

The surrounding circumstances of the parties, when relevant, and parol evidence thereof, is competent to show the agreement of the parties to the written contract, which the law does not require to be in writing, when it is expressed in ambiguous language or susceptible of more than one interpretation; and this principle applies to a contract made with an agent relative to his having also assumed a personal liability thereunder.

5. **Appeal and Error—Evidence—Competent in Part—Objections and Exceptions.**

Exceptions to evidence which is competent in part will not be sustained on appeal.

6. **Principal and Agent—Bills and Notes—Delay in Presentment—Agent's Liability.**

Where an agent has incurred a personal liability on negotiable instruments given in behalf of his principal, he may not avoid payment on the ground of delay in presenting them for payment when it was caused at his own request and by his own conduct.

7. **Same—Evidence—Correspondence.**

Where an agent seeks to avoid liability on notes he has given in his principal's behalf, whereon he is personally liable, on the ground of delay in presenting them, and there is evidence that this delay was occasioned by his own request and conduct, his correspondence with the payee bearing directly upon the question is competent against him in an action to recover upon the notes.

APPEAL by defendant from *Cline, J.,* at the May Term, 1918, of CALDWELL.

This is an action to recover judgment against the defendant George as endorser of certain checks of Sidney Spitzer & Co. aggregating $1,900 and as drawer of one check for $1,100.

CALDWELL COUNTY *v.* GEORGE.

A jury trial was waived and the court found the facts and announced certain conclusions of law as follows:

1. In the fall of 1916 the commissioners of Caldwell County deemed it necessary to issue and sell $50,000 of county bonds, the proceeds to be used: $38,000 thereof for rebuilding roads and bridges destroyed in the July flood and $12,000 for purchasing a new site for a county home. They advertised for bids for such bonds to be opened on 6th December, and Sidney Spitzer & Co., of Toledo, Ohio, through the defendant, John J. George, as their agent, filed a bid for the same at par, with accrued interest to delivery, and a premium, the rate of interest and time of maturities being fully understood and agreed upon. The commissioners had specified that each bid should be accompanied by a certified check for $3,000, payable to them or the county, to support and protect the bid and as security for its performance. Mr. George deposited five checks dated 24 November, 1916, aggregating $1,900, drawn by Sidney Spitzer & Co., payable to "John J. George, agent," endorsing each of them "John J. George, agent," and his own check for $1,100 on the First National Bank of Cherryville, N. C., payable to the order of W. J. Harrington, chairman.

2. Spitzer & Co. referred the matter to Hon. John C. Thompson, corporation lawyer of New York, who expressed doubt as to the validity of both the road and bridge bonds and the county home bonds. On 9th January, 1917, the plaintiffs and their attorneys procured the passage by the General Assembly of an act to authorize Caldwell County to issue bonds to improve and maintain the public roads and refund the debt incurred for building roads and bridges and to secure a site for and build a new county home.

3. This still did not remove the doubt from the mind of Mr. Thompson, counsel to Spitzer & Co., and he was yet unwilling to certify the bonds to be valid and binding upon the county. It resulted that a case was constituted for the Supreme Court, *Comrs. v. Spitzer,* 173 N. C., 147, opinion filed 14 March, 1917, in which the validity of the county home bonds was upheld and the doubt about the road and bridge bonds raised by the decision of the *Campbell* (Ohio) *case* disposed of by our own decisions in *Reade v. Durham, Rankin v. Gaston County,* and *Richardson v. Comrs. of Caldwell,* opinions handed down 30 May, 1917. The latter case was made up at the suggestion of Spitzer & Co., as shown by their letter of 15 March, 1917, they also having suggested a court decision touching the county home bonds in their letter of 5th February. They were ready and willing to take the bonds, as their correspondence shows, up to May, 1917 (and in March had the form of the $38,000 road bonds printed and sent to commissioners), provided always Mr. Thompson approved and accepted them. On 24th May they

notified the attorneys of the plaintiffs that they held themselves no longer obligated to take the bonds and asked a return of their certified checks. The reason given was on account of the unreasonable delay in the delivery of these bonds.

4. The defendant John J. George was the agent for the bidder for the bonds, a relationship well known to all concerned. The checks or drafts by him were not on and certified by any bank, but were certified by the drawer, Spitzer & Co., to be good when properly endorsed. When he tendered them to the board of commissioners he added his own check for $1,100 to make up the required deposit of $3,000, and stated to the board that he was solvent and had property in North Carolina sufficient to make his endorsement good, as well as his own check good. The board accepted these papers and contracted to sell the bonds to his principal, Spitzer & Co. He requested the board not to send them in for collection, saying he would replace them with New York Exchange. On 1 June, 1917, he wired plaintiff's attorney, "Suggest you not press payment of my check. When you get Supreme Court decision we may be able to adjust matters."

5. The defendant was acquainted with the status of the transaction when he wrote the letter of 5 January, 1917, and was inquiring about its progress on 26th March and seeking to aid in its confirmation on 6th April, 9th and 31st June, and as late as 3d August, several months after the bonds had been declined by his principal. He had not then and did not demand a return of his check.

6. Spitzer & Co. did not elect to withdraw their bid, nor did the defendant, their representative and agent, elect to do so, because the bonds for roads and bridges ($38,000) could not legally be issued in December, 1916, except upon approval by popular vote or without the assistance of the act of Assembly, ratified 8 January, 1917, being chapter 67, Public-Local Laws of 1917, but continued the bid in force, giving opportunity to the plaintiffs to have themselves clothed with authority and to resolve any further doubts by Supreme Court decision. While on several occasions in the spring of 1917 making some complaint of the delay and trouble incident to their issue, both Spitzer & Co. and the defendant reiterated their willingness to accept them if legal, this until 24th May, as before stated, Spitzer & Co. were on 11 January, 1917, notified of the legislative enactment of 9th January, above mentioned, repealing chapter 468, Public-Local Laws of 1913, and on 15th January they authorized Mr. Thompson to prepare a resolution to be adopted by the commissioners of Caldwell in compliance with this special act of the Legislature.

7. On 2 February, 1917, Mr. Thompson, attorney for Spitzer & Co., rendered an opinion declining to approve of the county home bonds, but

approving the road and bridge bonds. On 11th February Spitzer & Co. proposed to take the road bonds at a premium of $361 and the county home bonds at a premium of $174, and the county board assented to this. The Spitzer & Co. checks were presented to them for payment on 25 June, 1917, and payment was refused, the reason given the notary being "contract not complete." They were then protested. The George check was on 4th June presented to the Cherryville bank, on which it was drawn, and payment refused as having been stopped by him. It was then protested. The delay in presentation in each case was at the special instance and request of the defendant.

8. Later the plaintiff board ordered the bonds to be resold and directed that action be taken for the recovery of any deficiency or lossage below the bid of Spitzer & Co. They were finally sold to Cummings, Prudden & Co. at par, accrued interest, and a premium of $137, but at a rate of 5½ per cent interest, no bids having been received for 4¾ or 5 per cent bonds. The shortage in the proceeds of such sale below the bid of Spitzer & Co. was more than $3,000. The checks aggregating $1,900 were on 24 November, 1916, (prior to their delivery to the plaintiffs) certified by Spitzer & Co. to be good when properly endorsed. The plaintiffs are the owners and holders of said checks as well as the aforesaid individual check of the defendant George. They brought this suit against him alone.

9. The court finds that Mr. George meant to say to the commissioners that he personally assured and guaranteed them that his principals would keep and perform their proposed contract, and he was depositing evidences of debt to the amount of $3,000, to the payment of which in due course he was personally obligating himself in order that the board might not reject the bid on account of any failure to make the deposit required as a condition precedent. It concludes and holds as a matter of law that he thereby bound himself to the extent of this $3,000 for the performance of the contract upon the part of his principals.

10. The court is of the opinion that the county commissioners could not legally issue the $38,000 of road and bridge bonds prior to the enabling and validating act of Assembly of 9 January, 1917, and that, therefore, Spitzer & Co., or the defendant, could have at any time recalled their bid and have withdrawn it, though the $12,000 of county home bonds were at all times regular and valid. They did not do this, but assented to the act of validation and kept their bid intact. So the court holds that the contract was not void or avoided on that account.

11. As to the resolutions adopted by the board of county commissioners of February, 1917, superseding, rescinding and annulling all other resolutions (now found as a fact to have been prepared by Mr. Thompson, representing Spitzer & Co., and adopted at his and their

suggestion and request), the court holds as a matter of law they did not have the effect of canceling and annulling the contract for the purchase of the bonds, but was all a part of the method or course deemed by Mr. Thompson necessary to be pursued to carry out the contract legally and effectually, and this was concurred in by all parties, including the defendant.

12. As to the so-called new contract of 14 February, 1917, the court is also of opinion, and so holds, that it was not a new and separate contract to supersede the original to the extent it would release the $3,000 deposit, but was a part of the working out of the difficulties which in one way and another had operated to delay the consummation of the trade; that said deposit was still in force to secure the performance of this amended proposition, and that the defendant also continued to be bound thereon.

13. Upon the defense of unreasonable delay, this is to be determined in the light of all the facts and the conduct of both parties. Neither the defendant nor his principals stood upon this ground, but extended again and again to the plaintiffs the opportunity to clear up the objections of Mr. Thompson, so that delivery of the bonds could be made, and it is concluded and held in law that when the notice was given on 24th May there had not been such unreasonable delay as to release the purchasers from the obligations of their contract. The plaintiffs were able, ready, and willing to deliver the bonds to defendant for Spitzer & Co., or direct to the latter, for more than four months prior to 24th May, and they were legally bound and obligated to take them during that time and on the day of their notice of refusal.

14. From a consideration of the foregoing, it is clear that any loss, equitably speaking, ought to be borne by Sidney Spitzer & Co. But they are not before the court and there is no jurisdiction over them. John J. George is the only defendant, and the court concludes and adjudges that he is liable to the plaintiffs upon his endorsement and check for any loss sustained by them up to $3,000; and it having been found as a fact that they suffered a loss upon the resale of more than that amount, the plaintiffs are entitled to judgment against the defendant for $3,000 and cost of action.

The contentions of the defendant are:

1. That the drafts and checks were deposited as an evidence of good faith on the part of Sidney Spitzer & Co. in performance of an agreement of 6 December, 1916, and that this was an absolute nullity.

2. That the attempted contract of 6 December, 1916, was expressly rescinded and annulled by the plaintiff on 9 February, 1917, and later by the negotiations and agreement of 14th February and 5 March, 1917.

3. That the defendant was a disclosed agent, the scope of his agency

fully known; that in any view of the case, the drafts for $1,900 were the obligations of Sidney Spitzer & Co. alone, and that he, the known agent, incurred no personal liability.

4. That if it were conceded that the defendant was ever liable, he was never more than a surety for another under the contract of 6 December, 1916, and that by reason of the rescission and modification of 9th February and 5th March he is discharged.

5. That if it were conceded that the defendant was ever liable, he (the defendant) is discharged because of the failure of the plaintiff to present the instruments in a reasonable time. This is especially urged in the case of the drafts.

6. That there was no proper evidence of damage.

The defendant also took several exceptions to the evidence, which will be referred to in the opinion.

Judgment was rendered in favor of the plaintiff, and the defendant appealed.

*W. C. Newland and Mark Squires for plaintiff.*
*Mason & Mason, Lawrence Wakefield, and George W. Wilson for defendant.*

ALLEN, J. A jury trial being waived, the findings of fact by the judge have the force and effect of a verdict, and are conclusive upon us, in the absence of an exception that there is no evidence to support them (*Matthews v. Foy,* 143 N. C., 384), and there is no such exception in the record. We have set out these findings at length because they meet and answer every position taken by the defendant and fully sustain the judgment in favor of the plaintiff.

It is true the checks were deposited to guarantee the performance of the contract of 6 December, 1916, and that the plaintiff was without authority at that time to issue the bonds, but his Honor finds that neither Spitzer & Co. nor the defendant elected to withdraw the bid for the bonds or demand the return of the checks because the bonds could not be legally issued, but that, on the contrary, they "continued the bid in force, giving opportunity to the plaintiff to have themselves clothed with authority and to resolve any further doubts by Supreme Court decision." And the same finding applies with equal force to the second contention, the resolution of 9 February, 1917, and the negotiations and agreement of 14th February and 5 March, 1917, being with the knowledge and approval of Spitzer & Co. and the defendant, the court finding further that "while on several occasions in the spring of 1917 making some complaint of the delay and trouble incident to this issue, both Spitzer & Co. and the defendant reiterated their willingness to accept

them if legal, this until 24th May," at which time the plaintiff was ready and able to issue the bonds.

The personal liability of the defendant George is put beyond controversy because it is found that at the time the drafts and check were deposited by him he "meant to say to the commissioners that he personally assured and guaranteed them that his principals would keep and perform their proposed contract, and that he was depositing evidences of debt to the amount of $3,000, to the payment of which in due course he was personally obligating himself in order that the board might not reject the bid on account of failure to make the deposit required as a condition precedent" (finding 9).

This finding is based on the evidence of Mr. Squires, who testified: "I know the handwriting of W. J. Harrington, chairman of the Board of Commissioners of Caldwell County. I saw him endorse the check of John J. George, No. 8321, dated 6 December, 1916. I heard Mr. George, the defendant, say that he signed this check, and that Mr. Harrington endorsed it. I had a further conversation with Mr. George in reference to that check. At the time of the original negotiations I was not in Lenoir, but I met Mr. George in Raleigh very early in the month of January, 1917. I had a talk with him and a Mr. Emory; he was introduced as being a representative of Sidney Spitzer & Co., Toledo, Ohio. He said the checks were drawn by Sidney Spitzer & Co. in his favor as agent; that he did not have certified checks drawn by a bank, but he made the checks over to the Caldwell commissioners and made a statement to the board that he was solvent and had property in North Carolina sufficient to make his endorsement good, as well as his own check good, and he requested that these checks be not sent in for payment. Furthermore, he stated that he told the board not to send the checks in, that he would replace them with New York Exchange."

To the foregoing evidence, and all of it, the defendant objected and excepted in apt time.

The exception could not be sustained in any event because it is directed to all of the evidence of the witness, some of which is competent beyond question (*Phillips v. Land Co.,* 174 N. C., 545), but we are also of opinion the part tending to show personal liability of the defendant, to which the argument has been chiefly directed, is not objectionable because the personal liability of the defendant as agent was dependent on surrounding circumstances and conditions, and "Whenever the terms of a contract are susceptible of more than one interpretation, or an ambiguity arises, or the extent and object of the contract cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time

of making the contract and to determine the object on which it was designed to operate." 10 R. C. L., 1065.

"So where it is uncertain on the face of an instrument whether it was intended to bind the principal or the agent, parol evidence is admissible to explain the latent ambiguity, and to aid in the interpretation." 10 R. C. L., 1067.

The delay in the presentation of the drafts and check "in each case was at the special instance and request of the defendant" (finding 7), and he cannot now complain that the plaintiff did not demand payment earlier; nor does any change in or modification of the original contract have the effect of relieving the defendant from liability because the action of the plaintiff was with his knowledge and approval and at his instance. Even after Spitzer & Co. attempted to withdraw their bid on 24 May, 1917, the defendant, instead of asking that the drafts and check be returned, continued his negotiations with the plaintiff and recognized the contract to be in force. On 1st June he telegraphed counsel for plaintiff, "Suggest you not press payment my check. When you get Supreme Court decisions we may be able to adjust matters," and he wrote on 4th June, "Arrange meeting your county board for next Monday. Want to get everything adjusted satisfactorily." During all this time the plaintiff was endeavoring to meet every objection and held itself ready to deliver bonds, whose legality could not be questioned.

The evidence of damage is that, upon refusal of Spitzer & Co. and the defendant to take the bonds according to their contract, the plaintiff, after exercising due diligence and proper precautions, was compelled to resell the bonds at a loss in excess of the amount of the drafts and check, which justified the finding as to damages. The correspondence between the parties, to which objection was made, was competent as explanatory of the delay and for the purpose of showing that the original bid, with its securities, was kept open and was continuing.

The conclusion and judgment of his Honor are in our opinion just, and are supported by the facts and the law applicable thereto.

Affirmed.